## STATE v. COOLEY.
### No. 2387.
Circuit Court, Fifteenth Judicial Circuit.

March 9, 1973.

David H. Bludworth, State Attorney, for the state.

Walter N. Colbath, Jr., Public Defender, for the defendant.

JAMES R. KNOTT, Circuit Judge.

This cause is before the court upon defendant's motion for release from custody under the provisions of Florida Rule of Criminal Procedure 3.460.

The defendant was originally arrested on April 6, 1967, for first degree murder of two West Palm Beach policemen. On June 2, 1967, the court determined the defendant to be insane and he was committed to the South Florida State Hospital, Hollywood, Florida. Subsequently, on October 7, 1969, upon the advice of Dr. Richard H. Parks, superintendent of that institution, defendant was returned to Palm Beach County, where he was adjudged sane and competent to stand trial. Before pretrial motions, investigation, and other preliminary matters could be disposed of, it was brought to the court's attention that the defendant was again evidencing psychotic tendencies through strange, bizarre and threatening behavior, although he had remained under medication prescribed by physicians at the South Florida State Hospital.

Pursuant to proper procedure, the court on May 1, 1970, once again determined the defendant to be legally insane and remanded him to the Division of Mental Health, with the result that he was ultimately committed to the Florida State Hospital in Chattahoochee, Florida. On February 29, 1972, upon the advice of Dr. J. S. Rodriguez, attending psychiatrist there, that defendant "is now in good contact with reality and is not actively psychotic," the court ordered the defendant to be returned to Palm Beach County. After examination by a battery of court-appointed psychiatrists, all of whom agreed with Dr. Rodriguez, the court again declared defendant competent to stand trial.

Trial was held on July 17, 1972, in Broward County, Florida, before the court. Witnesses were present and testified on behalf of the state and the defendant, the testimony of defense witnesses going only to the issue of insanity at the time of the commission of the alleged offense. At the close of the trial, the court rendered a judgment of "not guilty by reason of insanity," and ordered defendant held pending final disposition of the cause.

The defendant's present motion for release from custody, opposed by the state, is based, as noted above, upon the provisions of Florida Rule of Criminal Procedure 3.460 (formerly Rule 1.460; similar to Federal Criminal Procedure Rule 31) reading as follows —

> When a person tried for an offense shall be acquitted by the jury for the cause of insanity, the jury, in giving their verdict of not guilty,

shall state that it was given for such cause. If the discharge or going at large of such insane person shall be considered by the court manifestly dangerous to the peace and safety of the people, the court shall order him to be committed to jail or otherwise to be cared for as an insane person, or may give him into the care of his friends, on their giving satisfactory security for the proper care and protection of such person; otherwise he shall be discharged.

At a post-trial hearing upon this issue the defense presented voluminous testimony, both lay and expert, as to the defendant's mental condition and as to what arrangements had been and could be made if the court were disposed to release him from custody.

The medical testimony shows that defendant is afflicted with schizophrenia, paranoid type, in a state of remission, and that if he stopped taking his prescribed medicine, he would relapse into his former psychotic condition. The report of Dr. George F. Welscher filed September 12, 1972, reads in part as follows —

> John Calvin Cooley is a 36 year old married black male, a laborer, father of 11 children, the oldest 21, the youngest 5. He was examined by me at the county jail on August 30, 1972, as the request of the Honorable James R. Knott, Judge in the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Palm Beach County.

> Mr. Cooley is a heavy set black male of normal height, who appears his stated age. He was neatly and cleanly dressed. Throughout the interview he was cooperative, thoughtful, helpful and friendly.

> The mental status examination shows that all functions were grossly within the normal limits. He is oriented in all three spheres. There are no delusions nor hallucinations; no abnormal anxieties; his perception of reality is good. His assessment of the reality situation within which he finds himself is excellent. He is able to discuss the experiences of his mental illness in some detail. His memory for both recent and past events is excellent. In essence he has reconstituted well and is at the current moment not psychotic.

> More important than Mr. Cooley's present condition is the question as to his ability to function in our society. There are several important points to be kept in mind. Mr. Cooley has suffered a serious mental illness and although he is now in an excellent remission with the help of tranquilizing drugs, there is the question of how long this remission will last. And what are the consequences if in the future the illness returns. It has been my experience in the past 7 years dealing with large after-care clinics that human beings that have suffered a severe acute schizophrenic episode are always in danger of having a repeat episode should the stresses of every day life prove too much for them

to handle. The danger of this however can be greatly minimized by intelligent use of after-care faciiities, in that minor flare-ups of the illness can be anticipated and usually aborted. National statistics also show that the greatest number of relapses occur within the first year of discharge from hospitalization, and that if the discharged patient can make it through the second year his chances of needing further hospitalization are markedly reduced. Hence I would recommend both for the protection of society and the protection of Mr. Cooley that he attend, on a monthly basis, an after-care faciiity for at least the next three to five years. I would feel that a monthly basis would be necessary in that it usually takes approximately a month for a full blown acute schizophrenic picture to appear. And a trained observer who has gotten to know Mr. Cooley well, would be able to help him detect this in time to take precautionary measures.

The report of Dr. John W. Roberson, filed October 2, 1972, reads as follows —

On September 27, 1972, by request of James R. Knott, Judge of the Circuit Court, John Calvin Cooley was seen for a psychiatric evaluation. This was the third such interview he had with the undersigned, the first being April 11, 1967, and the second, February 16, 1970, at both of which times he was determined to be suffering from schizophrenia, paranoid type. On the occasion of the 1970 evaluation, even though he had been hospitalized for over two years and was still receiving a maintenance dose Thorazine, it was felt that the improvement was marginal at best, and that he was delusional, dangerous to others, and would probably continue to manifest the disease in the future. The current findings differed dramatically in that Mr. Cooley was more relaxed and cooperative, and was no longer arrogant, suspicious or delusional. While the secondary symptoms of schizophrenia were absent there remained an associational defect, a tendency to be concrete on formal tests of judgment, and a slight inappropriateness of affect. His replies were in the main, vastly more acceptable, and it can now be said that the disease is quiescent and the current diagnosis is schizophrenia, residual type, which means there are signs of schizophrenia, but following the psychotic schizophrenic episode, he is no longer psychotic. It is not possible to predict definitely one way or the other whether he will at some time in the future again become floridly psychotic. If he continues to take adequate doses of phenothiazines similar to what he is now taking, he has a good chance of remaining asymptomatic, however, a final opinion on this qualified statement would have to be reserved until it was determined how he functions after he is released, if this is the court's disposition. It may be that the stress of working and coping with the demands of reality would prove too much for him to maintain his present state. In addi-

tion, it is not known how reliable he will be regarding his intake of medication. If he should discontinue it, I believe he will relapse almost certainly. The nature of the recurring illness would most likely be quite similar to his previous signs and symptoms, i.e., paranoid delusions and unbridled aggression directed at others.

The court has considered the foregoing reports, together with all other medical evidence and testimony, in reaching its conclusions.

As noted above, the defendant's state of remission cannot be expected to continue in the absence of his medication. In addition, there is no evidence that even with medication he could stand the strain and stress associated with the responsibilities and challenges of ordinary living; the record of his previous relapse while under medication is not encouraging in that respect.

The medical testimony indicates that defendant could be safely released from custody (a) if he continued his medication, (b) if he were required to submit to medical examinations at regular intervals and (c) if any changes in his conduct and behavior were observed and reported by his family and friends to the medical authorities entrusted with his case. Members of his family, including his parents residing in Lake City, Florida, where he proposes to live, have volunteered to cooperate and assist in the performance of these conditions, and natural kindly impulse would point toward releasing him in their care. However, practical considerations raise certain questions which do not permit so easy a solution to the court's discharge of its responsibilities — if the medication should be discontinued or if the stress of everyday life caused a resurgence of defendant's symptoms, what dependence could be placed upon his parents or other family members to report the same? Their good faith, when viewed in the light of their unschooled judgment and unsophisticated life pattern, is scarcely a sensible or satisfactory warranty. In the event of their absence, illness, senescence or death, what responsible agent would be ready to notify the court or the medical authorities? If the first observable sign of a relapse of defendant's condition should be a sudden departure to parts unknown, what dependable means would be at hand to follow and apprehend him in time to prevent harm to others?

The court, mindful of defendant's demonstrated potential for violence notwithstanding his present amenability, considers that under existing circumstances his discharge or going at large would be manifestly dangerous to the peace and safety of the people, and must therefore decline to release him from custody. It is the opinion of the court that as a basis for considering defendant's release from

custody an experience record should be established under conditions where his ability to resist stress, as well as his dependability in taking his medication, could be observed and reported. This would involve special attention and probably a degree of personal freedom of action for defendant which ordinary prison or hospital facilities do not afford. The court has earnestly endeavored to explore means of obtaining a special type of custodial care for defendant which would provide the experience record needed and allow him such freedom as might be commensurate with the surveillance which his condition requires. Parole and probation facilities, "halfway houses," mental health centers, and special types of state prison and state hospital units have been consulted; in each instance they have assured the court that their rules do not provide or allow care for persons in defendant's category. The Division of Mental Health requires the release of patients with a psychosis which is kept dormant and in a state of remission by medication when that condition has been maintained for a length of time sufficient to indicate that it will continue indefinitely. This policy, while it may be sound in general application, does not recognize the stress environment factor which the court feels is important in the present case, and fails to take into account the unusually high risk of harm inherent in the release of the exceptional person in remission who has a propensity for violence rendering him extraordinarily dangerous in the event his psychosis becomes reactivated.

Under Rule 3.460, supra, providing that the court may direct that the defendant "be cared for as an insane person," it is within the authority of the court to require him to be accepted by the Division of Mental Health, Department of Health and Rehabilitative Services, with jurisdiction reserved in this court to determine the circumstances and conditions under which he may ultimately be released.

Upon consideration, it is thereupon ordered and adjudged that the custody of defendant, John Calvin Cooley, be given and delivered by the sheriff of Palm Beach County to the Division of Mental Health, which agency shall accept custody of defendant for the purpose of supervising and governing his activities in such manner as to provide opportunity for further study and evaluation of his condition, and shall render to this court periodical reports thereon.

It is further ordered and adjudged that this cause shall remain subject to the jurisdiction and further order of this court, and that the defendant shall under no circumstances be released from custody without prior written order of this court.